COX, The JESSE J. See Case No. 7,295.

COXE (EWER v.). See Case No. 4,584.

## Case No. 3,310.

### COXE et al. v. HALE et al.

[10 Blatchf. 56;[1] 19 Int. Rev. Rec. 30; 8 N. B. R. 562; 21 Pittsb. Leg. J. 77.]

Circuit Court, N. D. New York. June Term, 1872.

#### BANKRUPTCY—PREFERENCE—FORFEITURE OF RIGHT TO DISTRIBUTION.

1. H. held valid mortgages on land of E., amounting, principal and interest, to more than the value of such land. E. conveyed the land to H., by deed, the wife of E. joining in the deed, the consideration of the conveyance being a sum proved to be the fair value of the land. At that time, H. was a creditor of E. in respect of other matters besides the mortgages, but did not know that E. owed any one but himself, and had no knowledge or suspicion that E. had not property sufficient to pay all that he owed. E., in fact, owed other debts, and was insolvent. H. learned this after receiving the deed, and then offered to the other creditors, to give up any priority and share equally with them. After that, and within four months after the giving of such deed, a petition in bankruptcy was filed against E., on which he was adjudged a bankrupt, and an assignee of his estate was appointed. H. then offered to the assignee to reconvey the land, subject to the mortgages. But the assignee brought suit, to compel H. to convey the land to him discharged of the mortgages. *Held*, that H. obtained no preference, by means of the deed; that it would have been no preference, even if H. had known that E. was insolvent; that the value of the land must be charged against the mortgage debt; and that H. must be permitted to prove, against the estate, the balance due on such debt at the date of the deed, with interest thereon.

2. A creditor, who knows his debtor to be insolvent, may sue him, and proceed to judgment, and take his property, on legal process, in such manner as would operate to give a preference to himself, if carried into full execution, and may then allege these facts as an act of bankruptcy and have the debtor adjudged a bankrupt.

[Cited in Mayer v. Hermann, Case No. 9,344.]

3. A creditor, who is not aware, until after he levies an execution, on the property of his debtor, that the debtor owes other debts, and who, when he learns that fact, offers to the other creditors, to give up his priority and come in on an equal footing with them, and who, after the debtor has been adjudged bankrupt, on the petition of another creditor, because of the levying of such execution, offers to the assignee in bankruptcy to relinquish all priority, and tenders a proof of debt, with a view to share pro rata only in the estate, does not forfeit his right to share in the estate.

4. Bill dismissed, with costs to be paid out of the estate in the hands of the assignee, on the ground that the circumstances were not so clear as to require any imputation on the good faith of the assignee, in prosecuting the suit.

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

[This was a bill in equity by Alfred C. Coxe and others against Nelson B. Hale and others to set aside a conveyance as fraudulent.]

George W. Smith, for plaintiffs.
Isaac S. Newton, for defendants.

WOODRUFF, Circuit Judge. The bill herein is filed to set aside a deed, executed by Eugene Eastman, a bankrupt, to the defendant Hale, his father-in-law, dated January 5th, 1870, (conveying certain real estate upon which the said Hale held three mortgages previously given by Eastman to Hale, and to others who had transferred to Hale), and to compel Hale to convey the premises to the assignee in bankruptcy, free and clear of the mortgage incumbrances; also, to compel Hale to pay over to the assignee all moneys paid to him by Eastman within six months next preceding the filing of the petition in involuntary bankruptcy, whereon Eastman was adjudged bankrupt; also, to vacate, set aside, and annul certain judgments recovered by Hale, in suits commenced against Eastman on the 14th day of January, 1870, and the executions issued thereon, and the levies made by the sheriff upon certain personal property of Eastman; also, to exclude the said Hale from proving, in bankruptcy, against the estate of Eastman, the mortgage debts, or the said judgment debts, or any other debts whereon such payments were made. The ground upon which this relief is prayed is, that the transactions sought to be impeached were done in fraud of the bankrupt law, and with the intent to secure to the said Hale an illegal preference over other creditors of the bankrupt.

The bankrupt, in the year 1866, married the daughter of the defendant Hale. He was possessed of little means, but had a trade, consisting of some department of carriage making. In 1867, he commenced the business of carriage making, at Oneida, but soon after went to Canastota, and purchased a carriage factory, where he continued to manufacture until January, 1870. His father-in-law advanced him $500 when he went to Oneida, and afterwards, from time to time, advanced him money for his business, and, in a few instances, endorsed notes for him, which he also paid for him when due. He received a mortgage from him on the carriage manufactory, and took an assignment of two other mortgages, which were on the same premises, when his son-in-law purchased them. The latter met with a small loss of $200, by fire, at Oneida, but this was not only made up, but largely more than made up, by gifts from the father-in-law, from generosity or out of regard to his daughter, and desire to promote the prosperity of both. For the purchase of the factory, tools, materials and unfinished work, and for the carrying on of the business, the advances of the father-in-law amounted, on the 5th of January, 1870, to a little more than five

thousand dollars, besides the mortgages, and exclusive of the gifts before mentioned; and it is a significant fact, bearing on the question of Hale's belief in his son-in-law's solvency, that he endorsed notes for his son-in-law in November and December, 1869, and January 1st, 1870, in the apparent confidence in his solvency, which, in his testimony, he declares he felt. Hale resided at Norwich, forty or fifty miles from Canastota, and was very rarely at the residence of his son-in-law, and had no acquaintance with the state of his business, except such as was derived from his son-in-law, and the apparent enlargement of his business, for which the advances were made by him. In the summer of 1869, he stated to his son-in-law, that he had advanced more than he could conveniently spare, and desired him to make some repayment; and, on the 9th of July, the son-in-law, having made a sale of cutters, directed the purchaser to pay the price to his father-in-law, which he agreed to do, and subsequently. in August and September, such payment was made, to the amount of $307. On the 5th of January, 1870, Hale went to Canastota, on a visit to his daughter, not having been there before for upwards of a year. At that time, as he explicitly testifies. he did not know of any indebtedness of his son-in-law, except to himself, and upon obligations endorsed by him, and had no knowledge or suspicion that his son-in-law had not property sufficient to pay all that he owed. While there, his son-in-law gave him a partial statement of his affairs, which showed him to be solvent, and which did not show any other indebtedness, except as above mentioned; and, before he left, his son-in-law, who had expressed a desire to reduce his business and had offered the factory for sale, executed and delivered to him the deed thereof mentioned in the bill of complaint. Hale appears, also, to have been dissatisfied with the use his son-in-law made of one of the notes which had been advanced to him, and, as he says, was desirous of collecting something upon the indebtedness. After he left, and on the 14th of January, 1870, Hale directed suits to be brought for that purpose, and, on the 4th of February, two judgments were recovered by him, by default, for an aggregate of over five thousand dollars, and executions were issued and levy made on the property of his son-in-law, which judgments, executions and levy are mentioned in the bill of complaint. On one of the executions the sheriff made some sales, but was stopped by an injunction out of the district court, in proceedings in bankruptcy. In fact, Eastman owed other debts, to a considerable amount, and one or more judgments were recovered against him, on confession, and, when this came to the knowledge of Hale, he immediately offered to the creditors to give up his judgments, and any claim of priority under the same, and come in with all creditors, to share the estate equally. But, the judgment creditor proceeded, by petition in the district court, against Eastman. He was adjudged bankrupt, and the complainants were appointed assignees. Hale, on the demand of the assignees, offered to re-convey the factory, subject to the three mortgages, respecting the bona fides and validity of which no question is made. He presented formal proof of his debts for which judgments had been recovered, and offered to relinquish the judgments and any claim of priority or advantage under the same. He had not, in fact, received anything upon the executions, and certain moneys which the sheriff had received were by the sheriff paid to the complainants, as assignees, and the assignees proceeded to sell, and did sell, the tools, materials, carriages and stock in trade, and all the property of the bankrupt not exempt by law. The assignees then bring this suit against Hale, and seek to compel him to pay over to the assignees the $307 received by him the previous summer, to convey the factory to the assignees freed and discharged of the said mortgages, and to exclude him from any dividend out of the estate, on the mortgage debts or the judgment debts.

The complainants rely, mainly, on the testimony of the bankrupt, and of Hale, the father-in-law, and circumstances disclosed therein in connection with the facts above enumerated, as showing that the transactions between them were a fraud upon the bankrupt law, because they were, on the part of Hale, with intent to secure a preference over other creditors, when he believed, or had reasonable cause to believe, that his son-in-law was insolvent.

Other than the fact that Eastman was insolvent, within the meaning of the term "insolvency," as defined in the law, that is, inability to pay his debts in due course of business. there is little, if anything, in the proofs. to overcome the positive testimony of both Eastman and Hale on the subject; and the testimony of both is positive and explicit, in denial that Hale, at any time down to his discovery that other creditors had recovered a judgment against Eastman, had any knowledge of such insolvency. And, that Hale intended to secure a preference, or accepted any payment, or conveyance, or judgment. for that purpose, or even with knowledge that they would so operate, is not possible. if it be true that he was not aware that Eastman owed any one but himself. I shall not go into the evidence in detail, but its consideration leads me to these conclusions:

First. The payment, for the cutters sold, made to the defendant Hale, by the direction of Eastman, was received by Hale in due course of business. without any belief of Eastman's insolvency, and without any reasonable cause for such belief. Nor was it paid in contemplation of insolvency, by Eastman. nor paid, nor received, with any intent to give or to receive a preference over other creditors. The $307, therefore, was lawfully

received by Hale, and he was entitled to retain it.

Second. The utmost value set upon the factory and the land whereon it stands, by any witness, is $3,000. The complainants furnish no evidence whatever that it was worth any more. The principal sums due upon the three mortgages thereon amount to $2,600, and the unpaid interest at the time of the deed given to Mr. Hale amounted to upwards of $500, making the mortgage lien over $3,-100, which is more than the mortgaged premises were worth. There is no evidence, nor is there any claim, that that mortgage debt was not due in good faith, free from any impeachment, under the bankrupt law or otherwise, or that the mortgage lien was not perfect, for the amount due. The deed, therefore, gave to Hale, (the father-in-law,) no preference. It could give none. He was entitled, by virtue of his lien, to the whole property already. Even more—the gratuitous release of the inchoate right of dower, by the wife of Eastman, was necessary to make the property worth the price, $3,000, at which Hale received it; and, although that right to dower was subordinate to the mortgages, a foreclosure would have been necessary to a compulsory extinguishment of the right. A foreclosure would have involved expense, necessarily reducing the net sum which could be realized on the mortgage-debt. So that, in fact, the conveyance, without foreclosure, operating to release the equity of redemption, so far from resulting in a preference to Hale over other creditors, had the effect of reducing the mortgage-debt to a greater extent than was otherwise possible, and, in that way, tended to the benefit of Eastman and his creditors. If, therefore, Hale had then known that Eastman was insolvent, it would be impossible to say that an acceptance of a conveyance of the equity of redemption, the property being confessedly worth less than the mortgage-debt, could be, or could have been, intended to be a giving, or an acceptance, of a preference over other creditors. Upon such a state of facts, they could derive no benefit from the property, in any event, and the estate of the bankrupt could not be enhanced thereby. The price agreed upon, and at which Hale agreed to take the property, being distinctly proved herein, by the complainants, to be a full and fair price, it should be charged against the mortgage-debt, and the defendant Hale must be permitted to prove against the bankrupt's estate, on account of that debt, only the balance due thereon, at the date of the deed, with the interest thereon.

The good faith of the defendant Hale was testified by his response to the demand of the complainant, that he give up the property. He offered to convey it to the assignee, reserving and retaining his original mortgage lien. Upon the proofs, this would have been of no benefit to the estate, and it was declined; and, by the same proofs, it follows, that Hale got no preference by the deed to him. He was only saved the expense of foreclosure. The complainants, or the creditors for whom they act, manifestly thought, that, upon a harsh application of the doctrine of merger of the lien in the legal title, they could succeed in avoiding the deed, as an illegal preference, and then exclude the defendant from any enforcement of his original mortgage lien, and the mortgage debt from any participation in dividends out of the estate in the hands of the complainants. On the question, whether, had they succeeded in setting aside the deed, it would have followed that the mortgagee must lose his lien, I do not find it necessary to express any opinion.

Third. As to the debts for which the defendant Hale obtained judgments. There is, undoubtedly, room for suspicion, that, before the father-in-law commenced the suits, on the 14th of January, he doubted either the ability or the willingness of his son-in-law to pay what he owed to him. But this is not enough to forfeit his right to share in the estate. A creditor is not compelled to forbear suing his debtor, on pain of losing his right to prove his debt, if the debtor should be adjudged a bankrupt within six months thereafter. Even where the debtor is known to be insolvent, if he has committed no act of bankruptcy, the creditors are not remediless. They are not bound to lie by, instituting no suit, and, as the case may be, see their debtor waste his property. They may sue, and, by proceeding to judgment, compel the debtor himself to apply to be decreed a bankrupt, or, if he do not, but suffers his property to be taken on legal process, in such manner as will operate to give priority or preference even to themselves, if carried into full execution, they may then allege this as an act of bankruptcy, and themselves demand that he be adjudged a bankrupt. It is by no means every recovery of judgment, even against a known insolvent, that amounts to an acceptance of a preference which will bar the proof of the judgment debt. If it were, then, no creditor would be safe in suing his debtor whose solvency he had reason to doubt. He must lie by, wait, in the hope that his debtor will commit some act of bankruptcy, and be remediless until he does so. It is the prosecution with intent to secure a preference, and the using the judgment with that intent, or in such wise that such preference will be the necessary result, which makes the creditor liable to be barred the right to prove his debt in bankruptcy. True, it has often been properly said, that the creditor must be deemed to intend the necessary result of his acts. But, where the creditor believes himself to be the sole creditor, or where he prosecutes suit, and thereby drives the debtor into an act of bankruptcy, this alone works no prejudice to the estate, and is no acceptance of a preference. To sue, recover judgment, and levy an execution, may often be the only means a creditor has of

forcing his debtor into bankruptcy, and of thereby compelling the equal distribution of his property among all creditors, in the very manner the bankrupt law prescribes; and it would be not only absurd, but grossly unjust, to treat this as a forfeiture of the right to share in the estate, and leave the whole to be divided among others less diligent in the endeavor to compel the debtor to do what is just, and what the law makes it his reasonable duty to do without such compulsion.

Notwithstanding the suspicion which is warmly insisted upon by the complainants, the proofs establish, that Hale was not aware, until after his executions were levied, that Eastman owed other debts. If not, then he was not seeking to procure an advantage over other creditors. When he learned that other creditors were pursuing Eastman, he at once offered to give up any apparent advantage gained by his judgments and executions, and come in on an equal footing with others. He went further. Those creditors having compelled Eastman to submit to an adjudication grounded on the very fact that he had suffered his property to be taken on legal process, thus availing themselves of the very act to which Hale, by lawfully prosecuting, had driven the debtor, he went to the assignee and offered to relinquish all claim of priority or advantage under his judgments and executions, and tendered proof of his debts, with a view to share pro rata only in the estate. Even if his prosecution had been, from the beginning, with knowledge that Eastman owed others as well as himself, and was wholly insolvent, he had a right to prosecute his suits to judgment and levy. That would have created an act of bankruptcy on the part of Eastman. This being so, had Hale thereupon become the petitioning creditor, and himself sought the adjudication, it could not be doubted that he would be entitled to share in the estate. This would not be accepting a preference, nor be doing anything to defeat or prevent the operation of the bankrupt law, but the contrary. Other creditors having, notwithstanding his offer to give up all claim of advantage by reason of such judgments and levy, made the latter the ground of an adjudication, as he might have done, he at once did all that was possible, to show that gaining a preference was not his purpose, as it was not the necessary result of what he had thus far done, namely, by offering to the assignees the surrender of all such advantage or apparent advantage. To hold that, under such circumstances, he forfeited his right to share in the estate, would be to hold, in substance, that no creditor can safely sue his debtor, and recover judgment, and levy his execution, although his debtor has until then committed no act of bankruptcy. He must leave his debtor in the uninterrupted enjoyment of his property, however insolvent he may be, in the hope that,

bye and bye, he will commit some other act of bankruptcy, upon which he can be proceeded against in the bankrupt court. Such is not the meaning, intent, or effect of the bankrupt law. That law does not discourage vigilance nor activity in forcing debtors to appropriate their property to the payment of what they owe. It is when advantage is accepted or obtained, with a view to preference over other creditors, or in circumstances in which such preference is the result of what the creditor does, or attempts to do, that the act becomes a fraud upon the law.

Dealing with this case, as I must, upon the testimony, I must say, that here the defendant Hale has gained no preference over other creditors, has not sought, or attempted to gain, a preference over other creditors, and has not done anything which deprives him of the right to prove his debts, and share with other creditors in the estate of the bankrupt. The bill of complaint was filed without sufficient cause, when the defendant had offered to do all, and even more, than he was bound in equity to do; but the circumstances were not so clear as to require any imputation upon the good faith of the assignees, in the prosecution of this suit. The bill of complaint must, therefore, be dismissed, with costs to be paid out of the estate in the hands of the assignees.